**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  | : |  |
|---|---|---|
| RALPH BAKER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 04-0037 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Defendants. | : | |
|  | : | |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.     BACKGROUND**

Plaintiff Ralph Baker ("Plaintiff"), currently an inmate at East Jersey State Prison, and

formerly an inmate at Union County Jail, brings this action  alleging various claims of deliberate

indifference to his medical needs, negligence, medical malpractice, and intentional infliction of

emotional distress.  Plaintiff's wife Sharon Berry-Baker**,** joins in the Complaint, alleging claims

derivative of her husband's claims.  Plaintiff's claims relate to the care Baker received for

Hepatitis C while at the Union County Jail during two separate incarcerations: one beginning on

June 22, 2003, and a second beginning on March 25, 2004.  (See Crose Statement of Undisputed

Facts, ¶ 3).  In all, Plaintiff was incarcerated in the Jail on four separate occasions: 1) July 17,

2002 - August 20, 2002; 2) October 30, 2002 for "a few days;" 3) June 22, 2003 - February 7,

2004; and 4) March 25, 2004 - July 20, 2004.  (Crose Statement of Undisputed Facts, ¶ 9).

Plaintiff discovered he had Hepatitis C on or about June 22, 2003.  (Crose Statement of

Undisputed Facts, ¶ 10).

## II.    PLAINTIFF'S RELEVANT MEDICAL HISTORY

After Plaintiff was diagnosed with Hepatitis C, two doctors at the prison, Dr. Mario Pico and Dr. George Long, began evaluating him.  Dr. Long stated in his answers to interrogatories that during the evaluation phase, he explained to Plaintiff that although there is a treatment for Hepatitis C, there are many potential side effects.  (Crose Br. at Exhibit E (Dr. Long Interrogatory No. 5)).  He explained that the treatment's rate of success is about 40 - 50%, and lasts 6 to 12 months depending on the Hepatitis C genotype.  (Id.)  Dr. Long also stated that he told Plaintiff that all patients must agree to a liver biopsy and diagnosis by a psychiatrist prior to undergoing treatment.  (Id.)

In October 2003, shortly after Plaintiff's diagnosis, Dr. Pico initiated the evaluation process in order to determine the necessity of Hepatitis C drug therapy treatment.  (Crose Statement of Undisputed Facts, ¶ 13).  Although neither Plaintiff's Interrogatories nor Dr. Pico's Answers clarify the nature of proceedings held in state court, both documents reference Dr. Pico's testimony before Judge Katherine R.. Dupuis on October 24, 2003, in which he described the drug treatment evaluation process.  (Crose Br. at Exhibit F (Interrogatories to Dr. Pico; Dr. Pico Interrogatory Answer No. 8)).  Dr. Pico stated that the Jail also began to initiate genotype, Hepatitis C, RNA, and bDNA testing.  (Id.).

Dr. Pico stated that qualitative testing was performed on October 31, 2003, and the results indicated that the liver enzymes were only slightly elevated.  (Id.)  The Jail performed genotype testing of the Plaintiff on October 3, 2003.  (Crose Statement of Undisputed Facts, ¶ 14; at Exhibit F (Dr. Pico Interrogatory Answer No. 11)).  Dr. Pico also ordered a liver biopsy

2

for Plaintiff as part of his Hepatitis C evaluation.  However, Plaintiff was moved to the state

prison system prior to its scheduled date.  (Crose Statement of Undisputed Facts, ¶ 16; at Exhibit

F (Dr. Pico Interrogatory Answer No. 10)).

     Dr. Pico also stated in his interrogatory answers that the staff engaged in several other

medical tests in response to Plaintiff's.  (Dr. Pico Interrogatory Answer No. 12; 16).  Plaintiff

was treated for hypertension in response to results from CBC/platelet count and renal function

tests performed.  (Id.)  Also, the Jail performed a test for tuberculosis on July 18, 2002, and

determined that additional isoniazed treatment was not necessary.  (Dr. Pico Interrogatory

Answer No. 16).

## III.   PROCEDURAL HISTORY

     On or about January 7, 2004,  Baker  filed a *pro se* Complaint against 21 separate

defendants.  Paragraph 15 brings claims against Defendant Frank Crose, Director of the Union

County Jail ("Crose"), and Paragraph 22 brings claims against Defendant Wayne Forrest

("Forrest"), a Somerset County prosecutor.  (Complaint, ¶ 15, 22).  Crose's and Forrest's

dispositive motions are now before the Court:  Crose brings a motion for summary judgment,

and Forrest brings a motion to dismiss, or, in the alternative, for summary judgment.

     Plaintiff is suing Crose, as well as other prison officials, on personal injury grounds

based on Crose's alleged failure to permit the medical director to examine and treat Plaintiff for

Hepatitis C.  (Complaint, ¶ 15).  The action alleges negligence, intentional negligence, infliction

of emotional distress, medical malpractice regarding treatment for Hepatitis C, and violations of

Baker's civil rights pursuant to 42 U.S.C. § 1983.  Id.

     Plaintiff is also suing Forrest, alleging that he:  1) knew that Baker had Hepatitis C, yet

sanctioned and encouraged his staff to raise his bail from $50,000 to $100,000; 2) knew that the State Department of Corrections denied Baker medical treatment; 3) joined into a conspiracy to "constrain, prevent and interfere with the release of the Plaintiff, under any circumstances;" 4) joined with the Honorable Edward M. Coleman, J.S.C., to deny Baker competent counsel by acquiescing in the dismissal of Baker's attorney; 5) maliciously, vindictively and selectively prosecuted Baker; and 6) racially profiled Baker.  (Complaint, ¶ 22).

The Defendants took Plaintiff's deposition on January 27, 2005 at East Jersey State Prison.  Plaintiff voluntarily dismissed several of the named defendants, as reflected in an Order filed on February 16, 2005.  These dismissed defendants included Dr. Long, Dr. Pico, and Patricia West, who were all members of the medical staff, as well as Theodore J. Romankow, Julie A. Peterman, Joann Miller, Natalie S. Candela, Bruce Kaplan, Ronald C. Appleby Jr., Martha B. McKinney, Devon Brown, Alfaro Ortiz, Charles M. O'Neil, Patrica Quinn, Dr. Khan Brown, Edmond Cicchi, Kathleen P. Holly, and Peter Harvey.

To date, Plaintiff has not filed opposition to Crose's motion; he timely filed opposition to Forrest's motion to dismiss, or, in the alternative, for summary judgment.

## IV    JURISDICTION

The Court has jurisdiction over the federal claims against the movants, including claims asserted under § 1983, 1985, 1986, and 1988, and under the Eighth Amendment of the U.S. Constitution.  The Court does not, however, have immediate jurisdiction over the remaining state claims as against Crose – negligence, infliction of emotional distress, and medical malpractice – as these are state law claims and do not satisfy the requirements of federal jurisdiction.  Nevertheless, if the Court determines these are "related to claims in the action

4

within such original jurisdiction that they form part of the same case or controversy," the Court

may choose to assert supplemental jurisdiction.  28 U.S.C.A. § 1367.

**V.      42 U.S.C. § 1983**

.   The Court construes plaintiff's allegations against Crose and Forrest as asserting

violations of his constitutional rights and will analyze his federal claims, and the defendants'

motions to dismiss them on substantive grounds, pursuant to a Section 1983 analysis.  Section

1983 provides a private cause of action against state actors for a deprivation of rights protected

by a federal statute or the United States Constitution. 42 U.S.C. § 1983 (2004).  The plaintiff

must demonstrate: (1) a violation of a right secured by the Constitution or the laws of the United

States; and (2) that the deprivation was committed by a person acting under the color of state

law.  Abraham v. Raso, 183 F.3d 279, 287 (3d Cir.1999)

**VI.     SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment may be granted only where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  "The role of the court is not 'to weigh the evidence and determine the truth of

the matter, but to determine whether there is a genuine issue for trial.'"  Taylor v. Plousis, 101

F.Supp.2d 255, 261 (D.N.J. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986)).  A "material" fact is one which is governed by the substantive law defining the claims,

and one which may affect the outcome of the action under such governing law.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); United States v. 225 Cartons, 871 F.2d 409, 419

(3d Cir. 1989).

The non-moving party must demonstrate a dispute as to the material facts and proffer "specific facts evidencing the need for trial."  Matsushita, 475 U.S. at 586; Marietta v. United Parcel Service Inc., 749 F. Supp. 1344, 1359 (D.N.J. 1990).  If the non-movant can produce evidence suggesting that there is a genuine issue of material fact upon which a reasonable trier of fact could differ, and therefore that a reasonable trier of fact could rule in its favor, the court must deny the motion.  Healey v. New York Life Ins. Co., 860 F.2d 1209, 1219 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989).  The non-movant must show more than "simply ... that there is a metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586; Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983), cert. dismissed, 465 U.S. 1091 (1984).

## VII.   DISCUSSION: CIVIL RIGHTS CLAIM AGAINST CROSE

Plaintiff alleges here that Crose, Director of the Union County Jail during the time he was incarcerated there, "has demonstrated deliberate indifference to the Plaintiff."  Complaint, ¶ 15.  Deliberate indifference to serious medical needs of prisoners constitutes a violation of the Eighth Amendment because it constitutes the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976)  A claim of "deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983."  Estelle, 429 U.S. at 104.

### A.   The Estelle Deliberate Indifference Standard

The "deliberate indifference" standard places a heavy burden on a plaintiff.  Only if the plaintiff can demonstrate a  "wanton infliction of unnecessary pain" that is "repugnant to the conscience of mankind" may he be successful in making an Eighth Amendment claim.  Estelle v. Gamble, 429 U.S. at 104-105.  Applied in the context of medical needs, a plaintiff can

demonstrate "wanton infliction of unnecessary pain" on proofs adduced that prison medical staff or guards "intentionally den[ied] or delay[ed] [the prisoner's] access to medical care or intentionally interfer[ed] with the treatment once prescribed." Id. But Estelle holds that "[t]his conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. In fact, the Supreme Court specifically held that neither negligence nor medical malpractice constitutes an Eighth Amendment claim. Id. at 105-106.

### B.    The Two Prongs of the Deliberate Indifference Standard

In Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), the Third Circuit broke the Estelle standard into two prongs: "First, plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind.'" Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

To satisfy the "objective" prong, the plaintiff must show that he has been deprived of medical attention for a "serious medical need" – one that has been "diagnosed by a physician as requiring treatment, one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention," or one which will result in "a life-long handicap or permanent loss" if treatment is denied or delayed. Id. at 500; Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). To satisfy the subjective prong, the plaintiff must demonstrate more than mere negligence; he must show that the defendant had the requisite intent to "act or fail to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994); Davidson v. Cannon, 474 U.S. 344, 348 (1986) (stating that "the

protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials.").

Along with this two step showing, the Third Circuit requires that § 1983 claims be pled with a "'modicum of factual specificity ... identifying the particular conduct of the defendants that is alleged to have harmed the plaintiffs.'" Maldonado v. Terhune, 28 F.Supp.2d 284, 289 (D.N.J. 1998) (citing Ross v. Meagan, 638 F.2d 646, 650 (3d Cir.1981); Darr v. Wolfe, 767 F.2d 79, 80 (3d Cir.1985)).

### C.      Application to Defendant Frank Crose

Here, the Plaintiff states that the Defendant "deprive[d] the Plaintiff of [his] Eighth Amendment right to be free from cruel and unusual punishment..." by alleging that Defendant did not permit him to get medical attention for Hepatitis C.  (Complaint, ¶ 15).  Crose argues in his moving papers that Plaintiff has proffered no facts in support.  (Crose Br. at 8).

Crose's Statement of Undisputed Material Facts states that he never spoke with Baker regarding Hepatitis C.  (Crose Statement of Undisputed Facts ¶ 7).  He also states that as Director of the Union County Jail, he has "no personal involvement in the policies and procedures by which the medical staff ... provides medical care."  (Statement of Undisputed Material Facts ¶ 6(7)).  Plaintiff's Complaint alleges only that Crose did "not allow the Medical Director to evaluate the Plaintiff for treatment," without factual elaboration.  (Complaint, ¶ 15).

Focusing on the first prong of the Montgomery deliberate indifference standard, and construing the facts in the light most favorable to the non-moving party, the Plaintiff has established that his diagnosis of Hepatitis C constituted a "serious medical need" – one which

"has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention" and where delay in treatment results in the "unnecessary and wanton infliction of pain."  Lanzaro, 834 F.2d at 347; Estelle, 429 U.S. at 103.  Defendant does not dispute that Hepatitis C can develop into a fatal condition if left untreated.

To satisfy the second prong, the plaintiff must show that Croce had some type of personal involvement in the incidents that are alleged to have violated plaintiff's civil rights. Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir.1988).  A prison official cannot be held liable under the Eighth Amendment using a deliberate indifference standard "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In addition, the official's act of disregard must be directly aimed at the prisoner; it is not enough that the official's subordinate disregarded the prisoner's condition.  There must be a showing that supervisory officials "played an affirmative role in the deprivation of the plaintiffs' rights." Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 336 (3rd Cir. 1981).

Here, Plaintiff summarily and without factual explanation alleges that the Defendant did "not allow" the Medical Director to evaluate him.  Not only is this a mere "bald assertion" – there is evidence in this record that Baker and Croce had no direct contact regarding medical attention to Plaintiff's medical condition.  (Crose Statement of Undisputed Facts, ¶¶ 6, 7). Crose's duties were never linked with the medical duties of the Correctional Health Services medical staff, the contracted medical provider for the Jail.  (Id.; Crose Statement of Undisputed

Material Facts, ¶ 6(5)).  In Crose's Statement of Undisputed Material Facts, he states that he did not have the authority to "direct the Correctional Health Services medical staff as to the manner or methods of providing any medical care..."  (Crose Statement of Undisputed Material Facts, ¶ 6(5)).  He also states that the medical staff was in the process of pre-treatment evaluation, and Plaintiff was scheduled for a liver biopsy for Hepatitis C.  (Statement of Undisputed Material Facts, ¶ 8 - 16). Far from offering record evidence to refute this, Plaintiff has voluntarily dismissed the medical staff involved in his treatment, including Dr. Pico, Dr. Long, and Patricia West, the Administrator of Health Services.

There are no facts, therefore, in this record to substantiate the second prong of the Eighth Amendment inquiry.  Section 1983 claims must be pled with a "modicum of factual specificity ... identifying the particular conduct of the defendants that is alleged to have harmed the plaintiffs."  Maldonado, 28 F.Supp.2d at 289 (D.N.J. 1998).  As Plaintiff fails to provide even this "modicum," the Court finds that summary judgment is warranted and dismisses the federal claims against Director Crose.

## DEFENDANT WAYNE FORREST

Plaintiff brings various claims against Somerset County Prosecutor Wayne Forrest, in both his individual and official capacity.   Forrest moves for dismissal, arguing that the Eleventh Amendment bars the claims against him in his official capacity, and the doctrine of absolute immunity bars the claims against him individually.

Forrest also argues, in the alternative, for the claims to be disposed of by way of

summary judgment, also on the basis of absolute immunity, stating that Plaintiff's claims lack a

factual basis.  He argues that liability even on the summary assertions Plaintiff makes in his

pleadings – which are little more than his belief that he was selectively, maliciously and

vindictively prosecuted by the Somerset County Prosecutor's Office – is foreclosed by the

doctrine of absolute immunity.

## VIII.   STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of

an action for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P.

12(b)(6).  In ruling on a 12(b)(6) motion, this Court must accept as true all well-pleaded

allegations of fact in Plaintiff's Complaint, as well as any reasonable inferences that may be

drawn therefrom.  A well-pleaded Complaint includes all of the essential elements of the

plaintiff's claims.  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996).  However, a court may not

consider "bald assertions," legal conclusions, or unwarranted factual inferences.  In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir.1997); Conley v. Gibson, 355

U.S. 41, 45-46 (1957).

## IX.   ELEVENTH AMENDMENT IMMUNITY: CLAIMS AGAINST FORREST IN HIS OFFICIAL CAPACITY

The Eleventh Amendment prohibits suits against any state or its agencies in federal court

by that state's own citizens or citizens of other states. Edelman v. Jordan, 415 U.S. 651, 662-63

(1974).  See also U.S. CONST. AMEND. XI (stating "[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State."). This prohibition extends to both legal and equitable relief, as well as all claims under

Section 1983.  Id.  It also extends to situations where a state or its agency is not a party to the

action, but is the "real party-in-interest."  Chisolm v. McManimon, 275 F.3d 315, 322-23 (3d

Cir. 2001).

      The state is the real party-in-interest if the named defendant is an "arm of the state," and

therefore Eleventh Amendment immunity would encompass such defendants.  Chisolm, 275

F.3d at 323.  The Third Circuit set forth the test to determine whether a defendant is, in fact, an

arm of the state in  Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d

Cir.1989), commonly referred to as the "Fitchik factors":  "(1) whether payment of a judgment

resulting from the suit would come from the state treasury, (2) the status of the entity under state

law, and (3) the entity's degree of autonomy."  Fitchik, 873 F.2d at 659; see also Chisolm, 275

F.3d at 323.  Although all three factors are important, many courts consider the first to be the

most critical.  Carter v. City of Philadelphia, 181 F.3d 339, 348 (3d Cir. 1999) (quotations

omitted); Hess v. Port Auth. Trans-Hudson Copr., 513 U.S. 30, 49 (1994).

      When applying the Fitchik factors to entities that perform in multiple capacities, a court

"must consider the capacity in which the entity was acting when its actions gave rise to the

plaintiff's claim."  Chisholm, 275, F.3d at 324.  County prosecutors function in "dual" capacities

– both in an administrative and a law enforcement capacity.  Coleman v. Kaye, 87 F.3d 1491,

1499 (3d Cir.1996); see also Wright v. State, 169 N.J. 422 (N.J. 2001).

    [W]hen county prosecutors execute their sworn duties to enforce the law by making
    use of all the tools lawfully available to them to combat crime, they act as agents of

> the state. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.

Coleman, 87 F.3d at 1499.  "[A] county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General."  Wright v. State, 169 N.J. 422, 461-62 (N.J. 2001).  See also N.J.S.A. § 2A:158-4 ("The criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors."); N.J.S.A. § 52:17B-106 (stating that the county prosecutor's law enforcement function is subject to the Attorney General's right to supersede).

Plaintiff's claims against Forrest arise out of the latter's "strict prosecutorial function" of "execut[ing] [his] sworn duties to enforce the law by making use of all the tools lawfully available to [him] to combat crime,"  Coleman, 87 F.3d at 1499, and relate to his work "under the supervision and supersession power of the Attorney General."  As such, Forrest functioned as an "arm of the state."  Wright, 169 N.J. at 461-62.  See also Chisolm, 275 F.3d at 323. Because an action under 42 U.S.C. § 1983 requires that an alleged deprivation was committed by a "person" acting under color of state law, Forrest's Eleventh Amendment argument is persuasive:  "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Davis v. Township of Lakewood, 2005 WL 1863665, *4 (D.N.J. 2005) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).  A cause of action under Section 1983 cannot lie against the State of New Jersey, its agencies, or its officials acting in their official capacities.  Id.  Thus, Plaintiff's claims against Forrest in his official capacity must fail.

13

## X.     ABSOLUTE IMMUNITY: CLAIMS AGAINST FORREST IN HIS INDIVIDUAL CAPACITY

Forrest argues that the Plaintiff's claims against him in his individual capacity must fail because all of the allegations relate to his "quasi-judicial" actions, which are protected by absolute immunity.  This immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," and extends to "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Plaintiff fails to assert any conduct beyond what is "intimately associated with the judicial phase of the criminal process," and therefore within the protection of absolute immunity.  Id.  See Kulvicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (decision to prosecute even where it is without a good faith belief that any wrongdoing occurred still protected by absolute immunity); Imbler v. Pachtman, 424 U.S. 409, 430 (1976) (stating that a prosecutor is immune from Section 1983 individual liability for acts "intimately associated with the judicial phase of the criminal process" such as initiating prosecutions and presenting the state's case).

The U.S. Supreme Court has declared that absolute immunity defeats a lawsuit at the outset.  Imbler, 424 U.S. at 419 n. 13.  The immunity offers wide protection for prosecutors, extending even if they acted wilfully, maliciously, or in bad faith.  Id.  See also Rose v. Bartle, 871 F.2d 331, 345 (3d Cir.1989) (immunity attached despite prosecutor's failure to investigate prior to initiation of grand jury proceedings and lack of good faith belief that unlawful conduct occurred); Kulvicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (stating that a prosecutor is

14

"absolutely immune when making [the] decision [to prosecute], even where he acts without a good faith belief that any wrongdoing has occurred.").  Absolute immunity protects "even groundless charges."  Id.  Here, the Court finds that absolute immunity bars Plaintiff's claim against Forrest in his individual capacity, and therefore finds that these claims must be dismissed.

The Court has carefully reviewed the record, and notes that all defendants have been dismissed thus far with the exception of Frank Crose and Wayne Forrest, whose motions are before the Court today, and Michelle Miller and Hassen Ibn Abdellah.

Michelle Miller is named in Plaintiff's Complaint as the "Chronic Care Coordinator" at the Jail.  (Complaint, ¶ 4).  Plaintiff sues Miller in her individual and official capacities for her alleged failure to treat his Hepatitis C adequately.  (Id.).  Plaintiff voluntarily dismissed these same claims against the other medical staff, including Dr. Long, Dr. Pico, and Patricia West. With the exception of Miller, there are no defendants remaining with regard to claims alleging inadequate medical care.  To the extent that the Court can find no difference between the dismissed claims and the claims against Miller, the Court dismisses all claims against Michelle Miller *sua sponte*.

Plaintiff's Complaint also names Hassen Ibn Abdellah.  (Complaint, ¶ 12).  Plaintiff alleges that Abdellah, an attorney who represented Plaintiff until he withdrew as counsel, engaged in a conspiracy with several other prosecutors also named in the Complaint to prevent Plaintiff from receiving medical attention and to prosecute Plaintiff for criminal acts he did not

15

commit.  (Id.)  It is axiomatic that conspiracy arises from an agreement between two or more

people to commit an act, and all other legal defendants named in this count have been dismissed.

Plaintiff also brings a claim against Abdellah for withdrawing as counsel, contending that the

withdrawal deprived him of his Sixth Amendment right to counsel.  (Id.)  Plaintiff has put forth

no facts in support of this contention, however.  The Court dismisses all claims against Hassen

Ibn Abdellah for failure to state a claim.

## XI.    CONCLUSION

       For the reasons stated herein, the Court grants both Defendant Frank Crose's motion for

summary judgment and Defendant Wayne Forrest's motion to dismiss with prejudice, and

dismisses all claims against the remaining defendants.  An appropriate order will be entered.

Dated: March 31, 2006

                                                       /s/ Katharine S. Hayden
_____Katharine S. Hayden, U.S.D.J.

                            _____